JUDGE JONES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
CATHY CABAN,

                              Plaintiff,

        -against-

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT and RAYMOND
KELLY, COMMISSIONER, SGT. TIMOTHY WILSON
SGT. BRIAN FUSCO, LT. JOHN SULLIVAN,
AND LT. KEANE Individually and in
their official capacities,

                             Defendants.
-------------------------------------------X

**VERIFIED COMPLAINT
AND JURY DEMAND**

08 CV 7653



The Plaintiff, CATHY CABAN, by her attorneys, CRONIN & BYCZEK, LLP, as and for her Complaint against the Defendants, respectfully set forth:

## NATURE OF ACTION

1.  This is an action for declaratory relief and damages to secure protection of and to redress deprivation of rights secured by the United States Constitution, New York State Executive Law §296, the New York City Human Rights Law, the New York City Administrative Code §8-107 and Title VII of the Civil Rights Act of 1964, as amended, providing for relief against discrimination in employment and to correct unlawful employment practices on the basis of the Plaintiff's gender and in retaliation for prior opposition to discrimination. This action also seeks relief for violations of the Civil Rights Acts 42 USC §§1981 and 1983.

2.    Additionally, this claim seeks money damages, both accrued and prospective, on behalf of the Plaintiff.

## JURISDICTION

3.    The jurisdiction of this Court is invoked based upon federal questions.  Further, the jurisdiction of this Court is invoked pursuant to the New York State Constitution, the Constitution of the United States, 28 U.S.C. §1343(3) and (4) and 28 U.S.C. 1331 as well as 42 U.S.C. §2000e through 2000e(15) and the New York State Executive Law §296, and the New York City Human Rights Law.

4.    The rights, privileges, and immunities sought herein to be redressed are those secured by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, provisions against gender discrimination based on 42 U.S.C. §§ 1981 and 1983, provisions against gender discrimination in employment based on Title VII of the Civil Rights Act of 1964, as amended, and guidelines and rules promulgated thereunder, along with the applicable provisions of the New York State Constitution and the New York City Human Rights Law.

5.    Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to state claims set forth herein.

## PRE-REQUISITES TO CLAIMS UNDER TITLE VII

6.    On or about April 10, 2007, Plaintiff, CATHY CABAN, filed a Verified Complaint with the United States Equal Employment

Opportunity Commission ("EEOC") which organization receives and investigates charges of discrimination as set forth by the Federal Anti-Discrimination Laws, Title VII of the Civil Rights Act, as amended.

7.    Said Complaint charged employment discrimination against Plaintiff, CATHY CABAN, by the Defendant, THE NEW YORK CITY POLICE DEPARTMENT ("NYPD"), because of Plaintiff's gender and retaliation. A copy of said Complaint is annexed hereto as Exhibit "A".

8.    On or about June 2, 2008, Plaintiff, CATHY CABAN, received a "Right to Sue" letter advising her of the completion of prerequisites to sue in Federal Court. A copy of the "Right to Sue" letter issued to Plaintiff, CABAN, is annexed hereto as Exhibit "B".

## VENUE

9.    Venue exists in the Southern District of this Court, County of New York, State of New York, based upon Defendants' residence.

10.    Further, the causes of action accrued within New York State (specifically, within the City of New York) based upon the situs of all acts charged and based upon violations of United States Constitution, Title VII of the Civil Rights Act of 1964, New York State Constitution and the New York State Executive Law, and the New York City Human Rights Law.

## PARTIES

11.   Plaintiff, CATHY CABAN, is a resident of the State of New York and resides within the confines of the "Southern District" of New York, and is a citizen of the United States.

12.   Plaintiff, CABAN is a female Hispanic-American who registered opposition to discriminatory practices by the Defendant, New York City Police Department, and thus is a member of a protected class.

13.   Defendant, CITY OF NEW YORK ("NYC"), is a municipal corporation duly organized under the laws of the City and State of New York, having its place of business within the City of New York, and including as its function operating, managing and financing the NEW YORK CITY POLICE DEPARTMENT.

14.   Upon information and belief, Defendant, NEW YORK CITY POLICE DEPARTMENT ("NYPD"), operates under the direct authority of NYC and is the official New York City agency charged with law enforcement and investigative duties through New York City, maintains control offices at 1 Police Plaza, New York, New York, along with satellite offices and precincts throughout the City and County of New York within the Southern District of New York.

15.   Defendant, RAYMOND KELLY, ("KELLY") at all times relevant to this Complaint was the Commissioner of the NYPD, the Chief Executive of the NYPD, and Plaintiff's superior officer; Defendant, KELLY, is sued herein in his individual and official capacities.

16.   Defendant, KELLY, as the Police Commissioner of NYPD, was the principal administrator of NYPD, employed by the NYPD.

17.   In his capacity as Police Commissioner of the NYPD, KELLY was responsible for the overall policies of the NYPD, including the institution and application of departmental rules, with respect to the administration of detective promotions and investigative track assignments during all times relevant to this complaint.

18.   Defendant, KELLY, at all times relevant herein, was responsible for the conduct of all police personnel operating under his command, including all of the Defendants, and is responsible for assuring that all officers comport themselves consistently with the Constitution of the United States and all state, federal and local laws.

19.   Defendant SGT. TIMOTHY WILSON ("WILSON") is a New York City Police Officer and Sergeant, at all times relevant employed by the New York City Police Department, and a supervisor whose direct supervision includes the 72nd Precinct squad of NYPD.  At all times relevant, WILSON was the Plaintiff's superior officer and is sued in his individual and official capacities.

20.   Upon information and belief, Defendant SGT. TIMOTHY WILSON was and is a resident of the State of New York and during the incidents alleged herein, and at all times relevant acted under color of law, within the scope of his official duties as a police officer and pursuant to statutes, ordinances and laws of NYC, New York State and the United States.

21.   Defendant, LIEUTENANT BRIAN FUSCO ("FUSCO") was a New York City Police Officer and Lieutenant, at all times relevant employed by the New York City Police Department, and a supervisor within the 72nd Precinct detective squad of NYPD.   At all times relevant, FUSCO was the Plaintiffs' superior officer and is sued in his individual and official capacities.

22.   Upon information and belief, Defendant SGT. BRIAN FUSCO was and is a resident of the State of New York and during the incidents alleged herein, and at all times relevant acted under color of law, within the scope of his official duties as a police officer and pursuant to statutes, ordinances and laws of NYC, New York State and the United States.

23.   Defendant, LT. JOHN SULLIVAN ("SULLIVAN") was a New York City Police Officer and Lieutenant, at all times relevant employed by the New York City Police Department, and a supervisor of the 72nd Precinct detective squad of NYPD.   At all times relevant, SULLILVAN was the Plaintiffs' superior officer and is sued in his individual and official capacities.

24.   Upon information and belief, Defendant LT. JOHN SULLIVAN was and is a resident of the State of New York and during the incidents alleged herein, and at all times relevant acted under color of law, within the scope of his official duties as a police officer and pursuant to statutes, ordinances and laws of NYC, New York State and the United States.

25.   Defendant, LT. KEANE ("KEANE") was a New York City Police Officer and Lieutenant, at all times relevant employed by the

New York City Police Department, and a supervisor of the 72nd Precinct detective squad of NYPD. At all times relevant, KEANE was the Plaintiff's superior officer and is sued in his individual and official capacities.

26. Upon information and belief, Defendant LT. KEANE was and is a resident of the State of New York and during the incidents alleged herein, and at all times relevant acted under color of law, within the scope of his official duties as a police officer and pursuant to statutes, ordinances and laws of NYC, New York State and the United States.

## I. FACTS UNDERLYING PLAINTIFF'S CAUSES OF ACTION

27. Plaintiff CABAN was appointed as a police officer by NYPD in July 2002.

28. In February 2005, Plaintiff CABAN was assigned to the 72nd Precinct.

29. From 2002 until the present, Plaintiff CABAN received excellent evaluations and had no disciplinary problems with the NYPD.

## RETALIATION

30. Following an incident in March 2006 in which Plaintiff questioned a Sergeant's refusal to permit Plaintiff to work overtime, Plaintiff received an evaluation from Defendant SGT. FUSCO which deliberately deflated the score to "3.0" rather than the mathematical "3.5" our of "4.0".

31.   Despite the correctness of the "3.5" evaluation, Plaintiff was threatened by Defendant SGT. FUSCO with a "3.0" on her evaluation unless she agreed not to go forward with her internal Equal Employment Opportunity (OEEO) complaint against her co-supervisors, SGT. WRIEDEN and SGT. WILSON.

32.   When Plaintiff refused to be stymied in her protected activity of complaining of unequal treatment, she was forced to work a "foot post" as punishment.

33.   While on foot post, Defendant LT. SULLIVAN, Defendant SGT. SASSON and SGT. HARRINGTON all approached Plaintiff and threatened her not to pursue an OEEO and to "zip" her mouth – all suggesting that things would get worse for her because "Lt. Sullivan holds grudges".

## HOSTILE WORK ENVIRONMENT

34.   Immediately upon assignment to the 72nd Precinct in February 2005, Plaintiff became subjected to continuous and impermissible discrimination based on gender.

35.   In November 2006, Plaintiff was forced to utilize a defective Radio Motor Patrol Car, #2145 FSD which caused Plaintiff serious physical injury

36.   LT. MARTINE and LT. KEANE knew of the defect in the police car yet these Defendants required Plaintiff to perform her entire tour in the vehicle.

37.   Upon becoming sick and lame, LT. KEANE and LT. MARTINE came to the hospital where Plaintiff was being treated to "confront" her partner about her "faking" the illness.

38.  A week later after returning from this Line of Duty illness, Plaintiff was further retaliated against.  Plaintiff and her partner were assigned to an outside precinct and giving their sector to rookies.

## ADVERSE EMPLOYMENT ACTIONS

39.  In January 2007, Plaintiff was again placed on a foot post for 20 tours ostensebly due to an RMP accident in November 2006. Upon information and belief, no male officers who had been in RMP accidents in November 2006 were forced onto foot posts.

40.  On January 9, 2007, LT. KEANE unjustifiably threatened Plaintiff with discipline for not updating her official file with a change of address.  When confronted with the evidence of the update, LT. KEANE became enraged and embarked upon further retaliatory conduct inflicting adverse employment action on Plaintiff.

41.  On January 15, 2007, Plaintiff was forced to recreate every post she had been assigned in the prior two weeks and to justify her activity reports.  Male officers were not required to make such lists.

42.  On January 29, 2007, Plaintiff was again injured in the Line of Duty and LT. SULLIVAN and LT. KEANE questioned Plaintiff's veracity.  Upon being confronted with evidence from a civilian witness of Plaintiff's veracity, LT. SULLIVAN and LT. KEANE berated Plaintiff and physically intimidated her, putting her in fear of physical injury which confrontation continued until the intervention of a fellow officer.

43. While being treated at the hospital in the line of duty, it is standard operating procedure for a fellow officer to be assigned to guard the member of the service who is in uniform and vulnerable and in need of protection. No such protection was assigned to Plaintiff.

44. At roll call on February 20, 2007, sexist comments were made and directed the Plaintiff, the only female.

45. Plaintiff continued to be assigned foot posts until March 9, 2007 at which time she was again threatened with foot post for documenting the turret lights in her RMP that were not working.

46. On March 31, 2007, Plaintiff was again given inferior work assignments while Rookies were permitted preferential assignments and treated with preference.

47. All promotion abilities and overtime possibilities were severely compromised by Defendants' imposition of hostile work environment, retaliation and adverse employment actions.

48. Plaintiff, throughout the years of her employ with NYPD, received consistent evaluations whereby she always met or exceeded performance criteria.

49. Plaintiff was well regarded by her supervisors and was always a dutiful and loyal employee of NYPD.

50. Despite Plaintiff's above-standards evaluations and seniority over others, Plaintiff was repeatedly passed over for promotion to Detective 2nd Grade and 1st Grade.

## AS AND FOR A FIRST CAUSE OF ACTION PURSUANT
## TO 42 U.S.C. §1983 AGAINST ALL DEFENDANTS

51.  The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "50" with the same force and effect as if fully set forth herein.

52.  Throughout the events recited herein, the individual Defendants, while acting under the color of law, subjected the Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, and specifically the Equal Protection and Due Process guarantees of the Fourteenth Amendment of the Constitution, and Civil Rights as guaranteed under Article I, Section II, of the New York State Constitution.

53.  Plaintiff has been deprived of her Constitutional Rights to be free of discrimination based upon her gender and opposition to discrimination, and has been damaged and suffered emotional distress and conscious pain and suffering as a result of these actions.

54.  The actions of Defendants, in depriving Plaintiff of her constitutional and civil rights, as hereinbefore stated, were willful and malicious acts.

55.  In addition to Plaintiff, Defendants have similarly violated the rights of other officers, all as part of a deliberate policy and practice and a deliberate course of conduct.

56.  As a result of the aforesaid wrongful, reckless and intentional acts of the Defendants, the Plaintiff has been damaged in

the amount of TEN MILLION ($10,000,000.00) DOLLARS.

57. Based on the foregoing, Plaintiffs is entitled to punitive and exemplary damages in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR AN SECOND CAUSE OF ACTION PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT AS AMENDED (GENDER DISCRIMINATION)

58. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "57" with the same force and effect as if fully set forth herein.

59. Based upon the above, the Plaintiff was discriminated against by Defendants by being forced to endure continued and repeated discrimination because of her gender and opposition to discrimination.

60. The Defendants, by and through the conduct of KELLY, WILSON, FUSCO, SULLIVAN and KEANE, as well as other unnamed individuals, intentionally and willfully harassed Plaintiff on account of her gender and opposition to discrimination, thereby violating Title VII of the Civil Rights Act of 1964 as amended.

61. As a result of the Defendants' conduct, the Plaintiff has suffered economic loss, pain, humiliation, extreme emotional distress and continues to suffer to this day, and further, as a result of the Defendants' conduct, the Plaintiff has suffered both professionally and personally.

62. As a result of the foregoing, the Plaintiff has been damaged in the amount of TEN MILLION ($10,000,000.00) DOLLARS.

Additionally, the Plaintiff seeks FIVE MILLION ($5,000,000.00) DOLLARS in punitive damages from each of the Defendants.

**AND FOR A THIRD CAUSE OF ACTION AGAINST
NYPD AND CITY OF NEW YORK UNDER THE NEW
YORK CITY ADMINISTRATIVE CODE §8-107(1) ET.SEQ.
AND THE NEW YORK CITY HUMAN RIGHTS LAW
FOR GENDER DISCRIMINATION**

63. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "62" with the same force and effect as if fully set forth herein.

64. The Defendants' treatment of Plaintiff and her complaints based upon gender discrimination, constitutes discrimination in violation of the New York Administrative Code §8-107(1) et.seq. and the New York City Human Rights Law.

65. The aforementioned occurrences were caused by the wrongful, careless, reckless and intentional acts of the Defendants.

66. Because of the foregoing, Plaintiff has been damaged in the amount of TEN MILLION ($10,000,000.00) DOLLARS. Additionally, Plaintiff seeks FIVE MILLION ($5,000,000.00) DOLLARS in punitive damages.

**AS AND FOR A FOURTH CAUSE OF ACTION PURSUANT TO
NEW YORK STATE EXECUTIVE LAW §296 AGAINST ALL DEFENDANTS**

67. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "66" with the same force and effect as if fully set forth herein.

68. Based on the foregoing, the Defendants intentionally and willfully discriminated against the Plaintiff in her employment on account of her gender and opposition to discriminatory practices, in violation of New York State Executive Law §296.

69. Plaintiff was continuously victimized by the Defendants' retaliation, harassment and adverse employment actions against her while her fellow male officers suffered no such treatment.

70. Even though Defendants were aware of Plaintiff's seniority and better qualifications, no actions taken by them were effective in correcting the discrimination suffered by Plaintiff.

71. Such conduct on the part of the Defendants and all others, without cause or justification, violated the Plaintiff's Civil Rights guaranteed under the New York State Constitution and the New York State Executive Law §296.

72. As a result of the Defendants' actions and of the deprivations of Plaintiff's rights as guaranteed under New York State Executive Law §296, the Plaintiff has suffered economic loss, pain, humiliation and extreme emotional distress.

73. As a result of the wrongful, careless, reckless and intentional acts of the Defendants, the Plaintiff has been damaged in the amount of TEN MILLION ($10,000,000.00) DOLLARS. Additionally, Plaintiff seeks FIVE MILLION ($5,000,000.00) DOLLARS in punitive damages.

## AS AND FOR AN FIFTH CAUSE OF ACTION
### PURSUANT TO THE NEW YORK
### CITY ADMINISTRATIVE CODE §8-107(1) ET.SEQ.

74.  The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "73" with the same force and effect as if fully set forth herein.

75.  The Defendants' adverse treatment, harassment and retaliation against Plaintiff based upon her gender and her opposition to discrimination, constitutes discrimination in violation of the New York Administrative Code §8-107(1) et.seq. and the New York City Human Rights Law.

76.  The aforementioned occurrences were caused by the wrongful, careless, reckless and intentional acts of the Defendants.

77.  Because of the foregoing, Plaintiff has been damaged in the amount of TEN MILLION ($10,000,000.00) DOLLARS.  Additionally, Plaintiff seeks FIVE MILLION ($5,000,000.00) DOLLARS in punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that this Honorable Court grant the following relief:

1.  Declaring the aforementioned actions of the Defendants unconstitutional and in violation of the New York State Constitution, the United States Constitution, applicable statutes, and the New York State Executive Law §296;

2.  Declaring the aforementioned discriminatory actions of the Defendants, THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT and RAYMOND KELLY, COMMISSIONER, SGT. WILSON, SGT. FUSCO, LT. SULLIVAN and LT. KEANE, in their individual and official

capacities, in violation of New York State Executive Law §296;

3.    Granting Plaintiff money damages in the amount of no less than TEN MILLION ($10,000,000.00) DOLLARS in compensatory damages or in an amount to be proven at trial;

4.    Granting  Plaintiff  FIVE  MILLION  ($5,000.000.00) DOLLARS in punitive damages;

5.    Granting Plaintiff permanent injunctive relief;

6.    Granting Plaintiff all costs of this action including reasonable attorneys' fees incurred by Plaintiffs; and

7.    Granting the Plaintiff such other and further relief as may be just.

## JURY TRIAL

The Plaintiff, CATHY CABAN, requests a jury trial on all questions of fact raised by the Complaint.

Dated:    Lake Success, New York
          August 27, 2008

Respectfully,

CRONIN & BYCZEK, LLP

LINDA M. CRONIN (LC0766)
ROCCO G. AVALLONE (RA8055)
Attorney for Plaintiff
1983 Marcus Avenue, Suite C-120
Lake Success, New York 11042
(516) 358-1700

TO:   SEE ATTACHED LIST

The City of New York
c/o New York City Law Department
100 Church Street
New York, NY 10007
New York County

Police Commissioner Raymond Kelly
New York City Police Department
One Police Plaza
New York, NY
New York County

Sgt. Timothy Wilson
c/o 72nd Precinct
830 4th Avenue
Brooklyn, NY 11232
Kings County

Sgt. Brian Fusco
c/o 72nd Precinct
830 4th Avenue
Brooklyn, NY 11232
Kings County

Lt. John Sullivan
c/o 72nd Precinct
830 4th Avenue
Brooklyn, NY 11232
Kings County

Lt. Keane
c/o 72nd Precinct
830 4th Avenue
Brooklyn, NY 11232
Kings County





**U.S. Equal Employment Opportunity Commission**
**New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TDD: 1-800-669-6820
FAX (212) 336-3625
1-800-669-4000

Respondent: NYC POLICE DEPARTMENT
EEOC Charge No.: 520-2007-01818
FEPA Charge No.:

June 5, 2007

**Cathy Caban**
**3916 Victory Blvd.**
**Staten Island, NY 10314**

Dear Ms. Caban:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ X ]    Title VII of the Civil Rights Act of 1964 (Title VII)

[ ]    The Age Discrimination in Employment Act (ADEA)

[ ]    The Americans with Disabilities Act (ADA)

[ ]    The Equal Pay Act (EPA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[X]        Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.
        New York State Division Of Human Rights
        Federal Contract Unit
        One Fordham Plaza, 4 Fl.
        Bronx, NY 10458
Please notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Sincerely,

Rodney Plummer
Investigator
(212) 336-3767

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s)
        George Fontana, Jr.
        Cronin & Byczek, LLP
        The Gateway at Lake Success
        1983 Marcus Avenue, Suite C-120
        Lake Success, NY 11042

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA<br>☒☒ EEOC | 520-2007-01818 |

and EEOC

State or local Agency, if any

NAME (Indicate Mr., Ms., Mrs.)
Mrs. Cathy Caban

HOME TELEPHONE (Include Area Code)
(347) 861-0137

STREET ADDRESS          CITY, STATE AND ZIP CODE
3916 Victory Boulevard, Staten Island, New York   10314

DATE OF BIRTH
11/19/1968

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME<br>New York City Police Department | NUMBER OF EMPLOYEES, MEMBERS<br>500 + | TELEPHONE (Include Area Code)<br>(212) 580-6406 |
|---|---|---|

STREET ADDRESS          CITY, STATE AND ZIP CODE
One Police Plaza, New York, New York   10038

COUNTY
New York

NAME   John Sullivan, Lt. Keane, Lt. Brian Fusco,
Sgt. Timothy Wilson, Capt. Tellado, Sgt. Sansone

TELEPHONE NUMBER (Include Area Code)
(718) 965-6311

STREET ADDRESS          CITY, STATE AND ZIP CODE
830 4th Avenue, Brooklyn, New York   11232

COUNTY
Kings

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE   ☐ COLOR   ☒☒ SEX   ☐ RELIGION   ☐ AGE
☐ RETALIATION   ☐ NATIONAL ORIGIN   ☐ DISABILITY   ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)          LATEST (ALL)

December 2005

☒☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached  Supplemental Charge of Discrimination re: EEOC Inquiry No. 520-2007-01818N

R E ☐ E I ☐ D
APR 10 2007
EEOC-NYDO-CRTIU

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

George Fontana

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT   Cathy Caban

Date 4/3/07   Cathy Caban
Charging Party (Signature)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)
3rd day of April 2007

EEOC FORM 5 (Test 10/94)

GEORGE FONTANA JR.
Notary Public, State of New York
No. 01FO6117443
Qualified in Nassau County
Commission Expires 10/25/2008

Supplemental Charge of Discrimination
Page 1 of 5

I, Cathy Caban, am a Hispanic female who opposes discriminatory practices, and as such, am a member of a protected class. I charge the above-named respondents with discrimination based upon their unlawful intentional pattern and practice of gender discrimination. The particulars are as follows:

I am employed by the New York City Police Department. I began my career with respondent Police Department in July 2002.

I have a clean and exemplary record consisting of stellar evaluation reports.

In February 2005, I was assigned to the 72 Precinct. It is my belief that I have been subjected to continuous and impermissible discrimination based upon my gender in that I am treated differently than male police officers who are similarly situated in the terms and conditions of my employment. Nevertheless, I do my job to the best of my ability.

I have personally suffered extreme emotional and physical distress and economic damage from my supervising officers at the NYPD. Specifically, I have been treated different because I am a female by Sgt. Timothy Wilson, Brian Fusco, Lt. John Sullivan, Sgt. Philip Sansone, Captain Tellado, and Lt. Keane of the 72 Precinct and PBA Delegate Mike Dougherty.

In March 2006, I was assigned to a sector in the precinct and was translating for a complaint/victim for the PDU. Upon completion of my tour and signing out, I was asked by Sgt Wrieden to go back out to a complainant/victim's house to have paperwork filled out. I informed Sgt Wrieden that I already finished my tour and signed out, and that if I go back out to the complainant/victim's house, could I receive salary overtime rather than banking time. He informed me that I would not receive cash overtime, and that I did not need to go back out. Two days later I was informed by P.O. Fusco that my evaluation wherein I received a 3 out of 5 would be changed to a 3.5, which I deserved based on an equal number of 3's and 4's on my evaluation, as long as I did not go to OEEO regarding my problems with Sgt. Wrieden and Sgt. Wilson.

On March 23, 2006 I made a formal complaint to the NYPD OEEO through Sgt. Simmons.

When I returned for my next tour, I was confronted by Sgt. Wrieden regarding a report 4 days earlier and why I would raise the issue of salary overtime regarding working after I completed my tour and signing out. I informed Sgt. Wrieden that I wanted my PBA delegate before we discuss the issue further and he said okay. No delegates were available so I left Sgt. Wrieden's office and headed out for my tour. Within 10 minutes of leaving the stationhouse I was ordered to return and was reassigned to a FootPost as punishment. Clearly the reassignment was retaliation for asking for a Delegate to be present for the discussion.

I declare under the penalty of perjury that the foregoing is true and correct.

_Cathy Caban_

CATHY CABAN

Sworn to before me this
3rd Day of April, 2007

_[signature]_
NOTARY PUBLIC

GEORGE FONTANA JR.
Notary Public, State of New York
No. 01FO6117443
Qualified in Nassau County
Commission Expires 10/25/2008

Supplemental Charge of Discrimination
Page 2 of 5

Lt. John Sullivan approached me during my FootPost tour to scratch (mark) my memobook and told me in threatening manner that I should not have an attitude with Sgt. Wrieden. Shortly thereafter while still on my tour, Sgt. Phillip Sansone approached me in a similar manner as Lt. Sullivan, and told me that I am better off "zipping it" since the Lt. is very stubborn and hold grudges. Next Sgt. Harrington approached me on my tour to scratch my memobook and told me that I should not have asked by my PBA delegate earlier when speaking with Sgt. Wrieden. Upon information and belief Sgt. Wrieden requested Sgt Harrington's presence during our discussion because I was a female officer. My partner that tour stated to me that Sgt. Wrieden told him that he was sorry that he had to be partnered with me, because he was a good worker.

In November 2006, my partner and I were given RMP 2145 FSD car which has a history of gas fumes emitting from the dashboard. We went out on patrol for approximately an hour and a half, when I began to get nauseous from the gas fumes. We returned to the stationhouse and informed Sgt Gonzales who was at the desk, and he informed us that no other cars were available. We went back out on tour and I became extremely dizzy and almost passed out in the passenger seat. My partner took me to the Lutheran medical Center Hospital where I was seen by a doctor. Lt. Martire, Lt. Keane, and Capt. Simonetti all when to the hospital to speak with my partner regarding my illness, and thought I was faking my illness, yet I was placed LOD ("Line of Duty"). After further review by doctors, I was informed that my throat and nose were inflamed.

One week later, upon returning to duty, Lt. Martire sent my partner and myself to the 78 Precinct and placed 2 rookies in our steady sector car, instead of us. This clearly is punishment, as I have more seniority than the two rookies. I spoke with Mike Dougherty my PBA Delegate and he told me he did not know why I was sent to the 78 Precinct. I informed him about my LOD a week earlier, and that the assignment to the 78 Precinct was retaliation and punishment. I asked him to speak with Lt. Martire about the punishment, and he refused to speak with Lt. Martire. I approached Lt. Martire about the tour over at the 78 Precinct and he claimed it was not punishment, but admitted that the RMP car that my partner and I were driving was sent to a mechanic and it was discovered that there was a fuel pump issue which was being fixed.

In January 2007, I was informed by Sgt. Harrington and Sgt. Menoni that for the next 20 tours I would be placed on a footpost tour due to my RMP accident in November 2006. The Commanding Officer at the Precinct stated that due to the 4 RMP accidents in December 2006 that all officers involved would be placed on footposts for 20 tours. Upon information and belief, even though my RMP accident was in November, I was still assigned 20 tours of footposts because I am female.

I declare under the penalty of perjury that the foregoing is true and correct.

*Cathy Caban*

CATHY CABAN

Sworn to before me this
3rd Day of April, 2007

NOTARY PUBLIC

GEORGE FONTANA JR.
Notary Public, State of New York
No. 01FO6117443
Qualified in Nassau County
Commission Expires 10/25/2008

Supplemental Charge of Discrimination
Page 3 of 5

On January 9, 2007, I was instructed to go to Lt. Keane's office to hand in my old plaque and get issued a new plaque. Upon entering Lt. Keane's office he refused to issue my new plaque claiming I did not update my address information when I moved from the Bronx to Staten Island. I informed him that I did update, in a timely manner when I moved. He emphatically disagreed with me and refused to issue me a new plaque. Lt. Keane then went on the computer system to demonstrate that I did not update my address and discovered that I did update my address accordingly, wherein he issued me a new plaque and claimed that earlier the system had me listed as living in the Bronx not Staten Island.

On January 15, 2007, Sgt, Menoni informed me and stated that the Commanding Officer wanted me to make a list of every post I was assigned to over the last two weeks. I told Sgt. Menoni that my assignments are on the rollcall sheets and on my monthly activity report. However, Sgt. Menoni stated that he did not care, and that the Commanding Officer wanted a list. Upon information and belief, no male officers were ever required to create a list, especially when the assignments were on the rollcall lists and the officers monthly activity reports.

On January 29, 2007, I was assigned as the T/S Operator at the Precinct, when a fight between two women started in front of the stationhouse. I ran outside the Precinct to assist my fellow officers and break up the fight. I sustained an injury to my hand and asked Sgt. Harrington to document the injury but that I did not want to go Line of Duty. EMS personnel that were present on the scene provided medical attention to my hand with ice packs and Band-Aids. Sgt. Harrington told me to do my LOD paperwork and he would sign off on it. Later that tour, Lt. Sullivan and Lt. Keane came to see me about my injury and told me that I must go to the hospital or the LOD would not be issued. I informed them that I did not need to go to the hospital and that I did not need the LOD. Both Lts. were agitated and yelled at me that I must go. Pam Rafford (PAA) was present and examined my hand and told me that she would be a witness on my behalf that I attempted to stop the fight outside the stationhouse. Lt. Keane still standing nearby began yelling at me, stating "Do I have a problem and if I had something to say to say it in his face!". He approached me in a very intimidating and threatening way and began to yell and reprimand me in front of numerous officers and three civilians in the stationhouse. Lt. Sullivan also approached me and began yelling at me at the same time. Lt. Keane then stated "come over here" and in front of just the three civilians that were waiting there, he continued to yell at me and state "If I had a problem to say it in his face." At that point P.O. Siclari told the three of us to go into the community affairs office and not argue in front of civilians. Lt. Sullivan continued to yell and harass me in

I declare under the penalty of perjury that the foregoing is true and correct.

_CATHY CABAN_

Sworn to before me this
3rd Day of April, 2007

NOTARY PUBLIC

GEORGE FONTANA JR.
Notary Public, State of New York
No. 01FO6117443
Qualified in Nassau County
Commission Expires 10/25/ 2008

Supplemental Charge of Discrimination
Page 4 of 5

the office and every time I attempted to respond to him, he yelled "I am not through talking!" Due to the injury to my hand and the prior harassment I have been facing, I feared further possible injury as Lt. Sullivan and Lt. Keane are much larger than myself and were screaming at me in an unprofessional manner. I informed them both that even though I was constantly receiving punishment because I am a female, I still maintained my summons and performed my job in a professional manner. At that point, Lt. Keane then screamed in my face "do you know that I'm a Lieutenant" and walked out with Lt. Sullivan.

I was then walked out with P.O. Siclari who apologized for the way I was treated and was then taken to LMC by Sgt. Boyle and 2 of his rookies. Upon arriving at the hospital, I was lest alone with no one to guard me. It is protocol that when an officer is taken to the hospital for medical treatment that an officer is assigned to guard that officer, especially when the injured officer is in uniform. Upon information and belief, they wanted to punish me because I am a female, and therefore left me unprotected at the hospital. A few hours after I was brought to the hospital, P.O. Polanco-Diaz from the midnight tour approached to stay with me.

On February 20, 2007, while standing at rollcall, the Commanding Officer made sexist comments and told a story about an off duty female officer at a baby shower and how "we all known how overly emotional pregnant women can be", while looking at me the whole time.

On February 22, 2007, I was assigned to a footpost as part of the 20 tours on footpost for the RMP accident in November. I spoke with P.O. LaDuca (male) and asked if he completed his 20 tours of footposts for his RMP accident in December and he told me no. Clearly, the 20 tours on footposts were only targeted at me because I am a female.

On February 26, 2007, I completed my 20 tours on footpost, yet the Commanding Officer still assigned me to a footpost.

On March 2, 2007, Sgt Morales told me that he did not know why I was on a FootPost, all he knew as that every time he did roll call, there was a note stating that "Caban" is to be on a FootPost attached to the rollcall.

On March 9, 2007, my partner and I were in an RMP heading to a job, when we noticed the turret lights were inoperable. We called in to Sgt Gonzalez (desk officer) about the turret lights and after the job, we returned to the stationhouse. Upon returning to the stationhouse, Sgt Gonzalez informed us that we were going to be changed to FootPosts in Sunset Park rather than assigned another RMP, even though many RMP's were parked outside the stationhouse. Sgt. Gonzales told my partner to check the wire

I declare under the penalty of perjury that the foregoing is true and correct.

_Cathy Caban_

CATHY CABAN

Sworn to before me this
3rd Day of April, 2007

NOTARY PUBLIC

GEORGE FONTANA JR.
Notary Public, State of New York
No. 01FO6117443
Qualified in Nassau County
Commission Expires 10/25/2008

Supplemental Charge of Discrimination
Page 5 of 5

connections inside the RMP for the turrets as they may be loose. My partner checked the plugs and reattached them as they did come loose. Upon reconnecting the turrets, my partner and I returned to our patrol tour. Sgt Wilson then went to scratch (mark) our memobooks and noticed that I documented all the RMP turret issue and the alleged reassignment to FootPosts. At that time Sgt Wilson questioned my partner P.O. Carillo why I made those entries and refused to scratch my memobook due to my entries. Later that tour, Sgt Wilson asked for our memobooks again to scratch them, and questioned P.O. Carillo again as to my entries as I was in the RMP guarding a complainant/victim. P.O. Carillo told me he felt as if he was GO15 since he was thoroughly questioned as to my entries in my memobook. P.O. Carillo told me that Sgt. Wilson scrutinized my memobook three times regarding the RMP turret issue and alleged reassignment to FootPosts. Upon information and belief, the alleged reassignment to FootPosts was retaliation for speaking against the discrimination I was facing.

On March 22, 2007, my partner P.O. Fernandez was asked to go to the Precinct to sign a CD with the ICO. The ICO told my partner that I was vindictive and that I failed to give a complete message to P.O. Fernandez regarding his W2 tax form. However, later the ICO then admitted to my partner that he never gave the complete message for me to forward to my partner. Clearly, my supervising officers are creating a hostile work environment for me and defaming my character because I am a female. Upon information and belief, no male officers are treated in this manner by supervising officers.

On March 31, 2007, I was assigned with my partner to Sector AB. Then with 25 minutes before our meal time, Sgt. Morales assigned us to do a prisoner transport, knowing it would overlap our meal time, even though there were 2 other officers in our sector with less time then me. Again, because I am a female, I am punished with undeserved assignments while male officers with less time are given more desirable assignments and preferential treatment over me.

All of these discriminatory acts have resulted in extreme emotional and physical distress and economic damage.

Based on the foregoing, I charge the above-named Respondents with discriminatory practice relating to employment by denying me equal terms, conditions, and privileges of employment because of my gender, and for acts of retaliation based on my opposition to discrimination in violation of Title VII and the New York State Human Rights Law, Section 296.

I declare under the penalty of perjury that the foregoing is true and correct.

_CATHY CABAN_

Sworn to before me this
3rd Day of April, 2007

NOTARY PUBLIC

GEORGE FONTANA JR.
Notary Public, State of New York
No. 01FO6117443
Qualified in Nassau County
Commission Expires 10/25/ 2008

**Exhibit B**

**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
5053 4714

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

May 28, 2008

Mrs. Cathy Caban
c/o Linda M. Cronin, Esquire
Law Offices of Cronin & Byczek
The Gateway at Lake Success
1983 Marcus Ave., Ste. C-120
Lake Success, NY  11042

Re:  EEOC Charge Against New York City Police Dept., et al.
     No. 520200701818

Dear Mrs. Caban:

   Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

   This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                          Sincerely,

                          Grace Chung Becker
                    Acting Assistant Attorney General
                          Civil Rights Division

          by     *Karen J. Ferguson*

                    Karen L. Ferguson
                 Supervisory Civil Rights Analyst
                 Employment Litigation Section

cc:  New York District Office, EEOC
     New York City Police Dept., et al.

I, the undersigned, am an attorney admitted to practice in the courts of New York State, and

☐ certify that the annexed

**Attorney's Certification**

has been compared by me with the original and found to be a true and complete copy thereof.

☐ say that: I am the attorney of record, or of counsel with the attorney(s) of record, for
. I have read the annexed

**Attorney's Verification by Affirmation**

know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon the following:

**Check Applicable Box**

The reason I make this affirmation instead of                    is

I affirm that the foregoing statements are true under penalties of perjury.
Dated :

.......................................................
(Print signer's name below signature)

STATE OF NEW YORK, COUNTY OF                    ss:

being sworn says: I am

☐ in the action herein; I have read the annexed

**Individual Verification**

know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

☐ the                    of

**Corporate Verification**

a corporation, one of the parties to the action; I have read the annexed
know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

My belief, as to those matters therein not stated upon knowledge, is based upon the following:

**Check Applicable Box**

Sworn to before me on                    , 20

.......................................................
(Print signer's name below signature)

.................................................................

STATE OF NEW YORK, COUNTY OF                    ss:

being sworn says: I am not a party to the action, am over 18 years of

age and reside at

On                    , 20          , I served a true copy of the annexed
in the following manner:

☐ by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service

**Service By Mail**

within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

☐ by delivering the same personally to the persons and at the addresses indicated below:

**Personal Service**

**Check Applicable Box**

Sworn to before me on                    , 20

.......................................................
(Print signer's name below signature)

.................................................................

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

CATHY CABAN,

                                                      Plaintiff,

            - against -

CITY OF NEW YORK et al.


                                                      Defendants.
_____


SUMMONS & VERIFIED COMPLAINT AND JURY DEMAND
_____


**CRONIN & BYCZEK, LLP.**
1983 Marcus Ave., Suite C-120
Lake Success, NY 11042
(516) 358-1700
(516) 358-1730 - Fax

_____

*To:*

*Attorney(s) for*
_____

*Service of a copy of the within*                                          *is hereby admitted.*

*Dated:*

.................................................................

_____

                                        *Attorney(s) for*
_____

*PLEASE TAKE NOTICE*

☐          *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within named Court on*                    20
ENTRY

☐          *that an Order of which the within is a true copy will be presented for settlement to the Hon.*
NOTICE OF                        *one of the judges of the within named Court,*
SETTLEMENT  *at*
            *on*                    20        *, at*              *M.*

*Dated:*
                                        CRONIN & BYCZEK, LLP.
                                        1983 Marcus Ave., Suite C-120
                                        Lake Success, NY 11042
                                        (516) 358-1700
                                        (516) 358-1730 - Fax


*To:*


*Attorney(s) for*                                                          N912 CL